UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GREGORY McARTHUR | : | |
| | : | PRISONER |
| v. | : | Case No. 3:10-cv-557 (VLB) |
| | : | |
| WARDEN JOHN ALVES | : | March 18, 2011 |

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Gregory McArthur, an inmate confined at the Cheshire Correctional Institution in Cheshire, Connecticut, brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2000). He challenges his conviction for felony murder, kidnapping in the first degree, manslaughter in the first degree and larceny in the third degree. For the reasons that follow, the petition is denied.

I.  Factual Background

The Connecticut Appellate Court concluded that the jury reasonably could have found the following facts.

At 10:30 p.m., on Friday January 2, 1998, petitioner called an escort service owned by Gabriel Gladstone. He requested an escort and provided his telephone number and address on Prospect Avenue in Hartford. Gladstone conveyed this information to the victim, a part-time employee of the escort service, but discouraged her from arranging an appointment. The victim contacted petitioner and arranged a meeting for late that evening. She informed Gladstone of the meeting. State v. McArthur, 96 Conn. App. 155, 158-59, 899 A.2d 691, 695 (2006).

Before the victim arrived at his apartment, petitioner went into the north end

of Hartford searching for drugs.  He was stabbed multiple times by a drug dealer when he tried to steal drugs.  Still bleeding from his injuries, petitioner appeared at the home of Victor Alvarado around midnight.  Petitioner refused an offer to call an ambulance.  Alvarado and his wife cared for petitioner and, at petitioner's request, Alvarado drove him back to Prospect Avenue.  Id. at 159, 899 A.2d at 695.

The victim drove herself to petitioner's apartment and arrived there at approximately 1:00 a.m. on January 3, 1998.  She called Gladstone from the apartment and told him that she was not keeping the appointment and was going home.  Petitioner did not want the victim to leave and a physical struggle ensued.  Petitioner prevented the victim from leaving by grabbing her leg and placing her in a headlock.  He held her until she stopped breathing.  Petitioner then carried the victim's body out of the building and placed it in her car.  He drove to Suffield and disposed of the body.  Id. at 159-160, 899 A.2d at 695.

Later that day, petitioner drove the victim's car into the north end of Hartford and approached Darryl Wilson, a drug dealer.  Petitioner "rented" the victim's car to Wilson and another drug dealer, Corey Brown, for $50 worth of cocaine.  Wilson and Brown dropped petitioner off at a "crack house," with the understanding that they would pick him up the following morning.  When they returned, petitioner was not there.  Brown kept the car for a time, then gave it to Wilson.  When Wilson learned that the car was connected to a missing person, he abandoned the car on a Hartford street.  Id. at 160, 899 A.2d at 695.

Sometime after obtaining the cocaine, petitioner appeared at the home of

his cousin and her husband, Barbara and Craig Shannon. Petitioner explained his disheveled clothes by stating that he had been in a fight in a nearby housing project. The Shannons helped petitioner clean his injuries. Petitioner refused their offer to call an ambulance. After a few days, the Shannons asked petitioner to leave. Petitioner went to his aunt's house in West Hartford. He asked his aunt and her daughter to clean out his Prospect Avenue apartment and fled to Massachusetts. Id. at 160, 899 A.2d at 695-96.

The victim's daughters were staying with friends in Waterbury on January 2, 1998. When the victim failed to pick them up the following day, they became concerned and went with their uncle to file a missing person's report at the Shelton police station. The victim's phone records led the police to Gladstone who told police about the victim's appointment with petitioner. The Shelton police went to the Prospect Avenue apartment where they found the door ajar and observed a chair, a bed and a bag of clothes with brownish-red stains. The Shelton police concluded that the apartment could be a crime scene and contacted the Hartford police. The Hartford police obtained a warrant and searched the apartment. They discovered blood stains on the walls, mattress and chair as well as a bag of bloody and punctured clothing. There was no evidence of the victim's DNA or blood in the apartment. Under the bed, the police did find an earring similar to one owned by the victim. Id. at 160-61, 899 A.2d at 696.

The Hartford police tracked petitioner to Massachusetts where he had been arrested and was incarcerated for other crimes. A Hartford detective spoke to

petitioner on August 24, 1998, but he was not returned to Connecticut until September 1, 2000. Upon his return to Hartford, petitioner provided four different accounts of the events of the evening of January 2, 1998, and early morning of January 3, 1998. In the second, third and fourth accounts, the last of which was recorded, petitioner confessed to strangling the victim. He stated that he placed her in a headlock to prevent her from leaving and held her until she stopped breathing. He also stated that he put the victim's body into her car, drove to Suffield to dispose of the body and then traded the car for cocaine. Id. at 161, 899 A.2d at 696.

II.     Procedural Background

Petitioner was arrested and charged with murder, capital felony, felony murder, first degree kidnapping and first degree robbery. After a jury trial, petitioner was found not guilty of capital felony; not guilty of murder, but guilty of the lesser included offense of first degree manslaughter; guilty of felony murder; guilty of kidnapping; and not guilty of first degree robbery, but guilty of the lesser included offense of third degree larceny. He was sentenced to a total effective term of imprisonment of sixty years, to run consecutively to the term he was then serving in Massachusetts.

On direct appeal, petitioner challenged his conviction on the grounds that: the State failed to prove the corpus delicti of the crimes and failed to prove all essential elements of the crimes, the trial court erred by refusing to allow petitioner to comment on properly admitted evidence during closing argument, the

4

trial court misinstructed the jury on the elements of kidnapping, and the trial court made improper remarks to the jury during a unanimity instruction. The Connecticut Appellate Court affirmed the conviction and the Connecticut Supreme Court denied certification. See State v. McArthur, 96 Conn. App. 155, 899 A.2d 691, cert. denied, 280 Conn. 908, 907 A.2d 93 (2006).

Petitioner filed a state habeas corpus action asserting ineffective assistance of trial counsel, but withdrew that petition. See McArthur v. Warden, No. CV054000557S, 2009 WL 1958428 (Conn. Super. Ct. Apr. 6, 2009).

### III. Standard of Review

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court. Estelle v. McGuire, 502 U.S. 62, 68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either

a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. Carey v. Musladin, 549 U.S. 70, 74 (2006).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. Bell v. Cone, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it also must be objectively unreasonable, "a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Boyette v, Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits). Because collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. Brecht v. Abrahamson, 507 U.S. 619, 634

(1993).

IV.   Discussion

Petitioner challenges his conviction on four grounds: first, the State failed to prove the corpus delicti of the crimes and failed to prove the essential elements of the crimes; second, the trial court erred by refusing to allow petitioner to comment on properly admitted evidence during closing argument; third, the trial court improperly instructed the jury as to the elements of kidnapping; and fourth, the kidnapping and felony murder convictions should be reversed because of the trial court's remarks governing the necessity for unanimity in the verdict. These are the same grounds raised on direct appeal.

A.   Failure to Prove Corpus Delicti and Essential Elements of Crimes

Petitioner first contends that the State failed to prove the corpus delicti of the crimes. The Supreme Court has held that proof of corpus delicti is not required to corroborate out-of-court statements of the accused. "[S]ubstantial independent evidence which would support the trustworthiness of the statement" is sufficient. Opper v. U.S., 348 U.S. 84, 93 (1954); see also U.S. v. Irving, 452 F.3d 110, 118-19 (2d Cir. 2006). Because proof of the corpus delicti is not required under Supreme Court law before the court can consider an out-of-court statement, petitioner's contrary arguments in his reply are ineffective and the alleged failure to establish the corpus delicti cannot constitute a separate ground for relief.

The Connecticut Appellate Court construed this claim as challenging whether substantial independent evidence was presented to support the

trustworthiness of petitioner's confessions and properly identified the law as stated in Opper. Thus, the decision is not contrary to Supreme Court precedent.

Petitioner argues that the State failed to present any independent evidence to corroborate his confessions. The Connecticut Appellate Court, however, noted that the State relied on the fact that petitioner had led police to the location of the victim's remains, the medical examiner testified that the victim had died as a result of homicidal violence and her remains were consistent with someone who had been strangled. In addition other evidence, although not corroborating the fact that petitioner killed the victim, verified other parts of the confession. For example, Victor Alvarado's testimony and the blood found in petitioner's apartment corroborated his statement that he had been stabbed. The earring found on the floor of petitioner's apartment was consistent with a struggle in the apartment. Gladstone's testimony and telephone records verified events leading to the victim's death and the testimony of Wilson and Craig Shannon corroborated events following the victim's death. McArthur, 96 Conn. App. at 166-67, 899 A.2d at 699. This Court concludes that the state court's determination that sufficient independent evidence was presented to establish that petitioner's confessions were trustworthy was not an unreasonable application of Supreme Court law.

Petitioner also challenges the sufficiency of the evidence presented to support his conviction on the various charges. The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of each element of the crime with which he is charged. Fiore v. White, 531 U.S. 225,

8

228-29 (2001); In re Winship, 397 U.S. 358, 364 (1970). Federal courts, however, "are not forums in which to relitigate state trials." Herrera v. Collins, 506 U.S. 390, 401 (1993) (internal quotation marks and citation omitted). The federal court does not make an independent determination of guilt or innocence. See id. at 402. When a petitioner challenges the sufficiency of the evidence used to convict him, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In discussing this standard, the Supreme Court has emphasized "the deference owed the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency [of the evidence] review." Wright v. West, 505 U.S. 277, 296 (1992). Thus, the federal court does not re-evaluate the credibility of witnesses. See Schlup v. Delo, 513 U.S. 298, 330 (1995).

In analyzing the kidnapping charge, the Connecticut Appellate Court stated that the kidnapping statute required abduction, which was satisfied if the victim was restrained "with the intent to prevent her liberation through the use of physical force." McArthur, 96 Conn. App. at 168, 899 A.2d at 700. The state court then determined that petitioner's actions in preventing the victim from leaving his apartment satisfied the restraint requirement. In addition, the state court concluded that the jury could have inferred from the manner in which petitioner stopped the victim from leaving, holding her in a headlock, that he intended a physical assault. This Court concludes that the state court's analysis was a

9

reasonable determination of the facts and a reasonable application of the law to those facts.

Similarly, the Connecticut Appellate Court determined that the State presented sufficient evidence to show that petitioner intended to cause serious physical injury to support the manslaughter charge. The state court acknowledged that the medical examiner could not definitively state that the victim died from strangulation. However, the court concluded that the medical examiner's statement that the victim's remains were consistent with death by strangulation accompanied by petitioner's confession as to the manner in which he restrained the victim supported the jury's inference that petitioner intended serious physical injury, even if he did not intend death. As the Court must consider the evidence in the light most favorable to the prosecution, the Court concludes that the state court's determination was not an unreasonable application of Supreme Court law.

Petitioner claims that there was insufficient evidence to establish larceny because the State failed to present any evidence as to the value of the victim's car. The State was required to prove that the car had some value less than $5,000.00. The jury was provided evidence that the car was operable and that petitioner had "rented" the car for $50 of cocaine. Thus, the jury could have found that the car was worth at least $50.00. The Connecticut Appellate Court's analysis of this claim was not an unreasonable application of Supreme Court law.

Finally, petitioner argued that the lack of sufficient evidence to support the

kidnapping charge should negate his conviction for felony murder. As the Court determined above, the Connecticut Appellate Court's analysis of the kidnapping charge was not unreasonable. Thus, petitioner's challenge to his conviction for felony murder fails.

B. <u>Refusal to Permit Comment During Closing Argument</u>

Petitioner argues that he was denied his Sixth and Fourteenth Amendment right to make a closing argument because the trial court precluded him from commenting on the State's failure to call Corey Brown as a witness. While petitioner has a constitutional right to present a closing argument, the trial court has broad discretion to control the duration and scope of that closing argument. <u>See</u> <u>Herring v. New York</u>, 422 U.S. 853, 858, 862 (1975). Thus, to the extent that petitioner contends that he had an absolute constitutional right to comment on the missing witness during closing argument, his claim fails. The Connecticut Appellate Court references state cases which rely on <u>Herring</u>. Accordingly, the decision is not contrary to Supreme Court precedent.

The missing witness was Corey Brown, one of the drug dealers to whom petitioner "rented" the victim's car in exchange for cocaine. Neither side called Brown as a witness. Brown went to the public defender's office in response to a subpoena left at his mother's home. Counsel did not report this fact to the prosecution and did not tell Brown that the police wanted to question him. Rather, petitioner argued that Brown was available to testify and the failure of the State to call him as a witness demonstrated a weakness in the State's case. The trial court

11

rejected this argument because petitioner did not make an offer of proof about testimony Brown would have given and did not show how the absence of Brown's testimony weakened the case against petitioner.

In his reply, petitioner argues that the Connecticut Appellate Court is imposing an additional requirement not mandated by the Connecticut Supreme Court by requiring him to make an offer of proof before allowing him to comment on Brown's absence. This argument is ineffective. Any error of state law is not cognizable in a federal habeas corpus action. See Estelle, 502 U.S. at 68. Further, to the extent that petitioner's argument may be construed as asserting that trial counsel was ineffective because he failed to make the offer of proof petitioner appears to be presenting in his reply, there is no claim for ineffective assistance of counsel in this case.

The Connecticut Appellate Court reviewed the actions of the trial court and concluded that the trial court's exercise of discretion was proper. McArthur, 96 Conn. App. at 173-75, 899 A.2d at 702-03. Specifically, the Connecticut Appellate Court explained that the trial court had the discretion to limit the scope of closing argument because all the defendant presented to the court was a blanket statement that Brown's failure to testify demonstrated a weakness in the state's case. *Id.* This Court agrees and concludes that the Connecticut Appellate Court's determination that petitioner was not deprived of his constitutional right to present closing argument is not an unreasonable application of Supreme Court law.

### C. Jury Instruction on Elements of Kidnapping and Remarks on Unanimity

The last two grounds for relief concern instructions to the jury. Specifically, the petitioner claims that the trial court misinstructed the jury with respect to the elements of kidnapping and made improper remarks on unanimity. To warrant habeas corpus relief, petitioner must establish that the instruction "by itself so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991); see also Cupp v. Naughten, 414 U.S. 141, 146 (1973) (petitioner must show "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed by the Fourteenth Amendment"). That the instruction violated state law, without more, does not warrant federal habeas relief. See Estelle, 502 U.S. at 71-72. When analyzing a claim of an improper jury instruction, the court must consider the instruction in the context of the charge as a whole and the entire trial record. See Francis v. Franklin, 471 U.S. 307, 315 (1985). In evaluating a jury instruction, the court considers "the way in which a reasonable juror could have interpreted the instruction." Sandstrom v. Montana, 442 U.S. 510, 514 (1979). This burden is "'especially heavy'" when the challenged jury instruction quotes a state statute. Waddington v. Sarausad, 555 U.S. 179, 129 S. Ct. 823, 831 (2009) (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)). The Connecticut Appellate Court's statement of the law, although taken from state cases, is consistent with Supreme Court precedent.

### 1. Elements of Kidnapping

In his third ground for relief, petitioner argues that the trial court improperly instructed the jury in response to a question regarding kidnapping and unlawful restraint.

Kidnapping in the first degree, as charged in the information, is restraint of another person "with intent to (A) inflict physical injury upon him or violate or abuse him sexually; or (B) accomplish or advance the commission of a felony...." Conn. Gen. Stat. § 53a-92(a)(2). In the initial charge, the state court instructed the jury that kidnapping in the first degree was a restraint intended to accomplish or advance the commission of robbery or murder. Petitioner does not challenge that instruction. Rather, he challenges the state court's supplemental instruction on kidnapping. He contends that the court should not have instructed the jury that it could rely on manslaughter as one of the possible intended felonies.

The challenged instruction provides:

> Now, since you've asked me about manslaughter, there are some situations where kidnapping in the first degree can be for the purpose of advancing the commission of the felony of manslaughter, but not always.
>
> Only manslaughter with intent to inflict serious physical injury is a manslaughter that would qualify for this element of kidnapping in the first degree because kidnapping is an intentional crime, and it is possible to kidnap with the intent to further a death committed in the course of intending to commit serious physical injury.
>
> But it is not possible to have a kidnapping in the first degree intentionally designed to commit a reckless manslaughter. One cannot intend to do something recklessly. Well, one can intend to do something foolishly, recklessly, but one cannot intend under our law.

14

> So, only manslaughter [subdivision] (1), the physical injury, is eligible for one of the felonies that is the required element of kidnapping in the first degree.

**McArthur**, 96 Conn. App. at 177 n.7, 899 A.2d at 704 n.7.

The Connecticut Appellate Court concluded that the instruction could not have confused the jury because the trial court carefully limited consideration of manslaughter to situations where manslaughter resulted from conduct demonstrating an intent to inflict serious physical injury. The trial court specifically excluded manslaughter resulting from reckless conduct. This Court agrees that the trial court's instruction would not permit the jury to consider manslaughter to be the requisite felony to support the kidnapping charge unless the manslaughter resulted from intentional conduct by petitioner. The state court's analysis is not an unreasonable application of Supreme Court law.

### 2. Remarks on Unanimity

In his fourth ground for relief, petitioner contends that the trial court denied him his rights to due process, a fair and impartial trial and a unanimous verdict free of coercion as a result of the trial court's instruction to the jury to reach a unanimous verdict on the kidnapping charge.

Before giving the standard state charge on unanimity, the trial court stated:

> Keep in mind how important it is for you to reach unanimous agreement, because if you can't agree, then the case as to the charge that you can't agree on is mistried and the case has to be tried again. There's no particular reason to believe that the next twelve of you will be any more conscientious and impartial than you are.

**McArthur**, 96 Conn. App. at 179-80, 899 A.2d at 706. In the following charge on

15

unanimity, the trial court explained that the jurors should carefully and respectfully consider each other's opinions with an open mind and not merely acquiesce in another juror's opinion. See id. at 180, 899 A.2d at 706.

The Supreme Court has reversed a conviction where prefatory to a unanimity charge, the trial court told the jury, "You have got to reach a decision in this case." Jenkins v. U.S., 380 U.S. 445, 446 (1965). The Supreme Court determined, based on the facts and circumstances of that case, that the statement was coercive. In his reply memorandum, petitioner argues that the remarks made by the trial court in this case were coercive and refers the Court to U.S. v. Harris, 391 F.2d 348 (10th Cir. 1968), and U.S. v. McElhiney, 275 F.3d 928 (10th Cir. 2001). In Harris, the court determined that prefatory remarks were coercive. The trial judge had informed the jury that this was the second trial in the matter and insisted that the jury reach a verdict. In McElhiney, the court's statement was held coercive because it was not followed by the customary admonition about the jurors' conscientiously held convictions.

Petitioner's argument is not persuasive for several reasons. First, the cases petitioner relies on are appellate cases. To obtain federal habeas corpus relief, he must demonstrate that the state court ruling is contrary to Supreme Court precedent. Second, the cases petitioner cites were before the court on direct appeal. As indicated above, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant habeas relief. See Brecht, 507 U.S. at 634. Third, the state court in this case did not demand a unanimous

verdict. Although the court stated that unanimity was important, it did not say unanimity was mandatory and it also emphasized in the language immediately following that each juror must vote his own conscience and not agree merely to reach a unanimous verdict.

Although the Connecticut Appellate Court agreed that the prefatory language should not have been included, the court concluded that any error was cured by the subsequent accurate recitation of the instruction and the trial court's emphasis on the deliberative process. As required by Supreme Court precedent, the state court considered the objectionable language in the context of the instructions as a whole. Thus, the Connecticut Appellate Court's determination was a reasonable application of Supreme Court precedent.

V.     Conclusion

Based upon the above reasoning, the petition for writ of habeas corpus [Doc. No. 1] is DENIED. The Clerk is directed to enter judgment in favor of the respondent and to close this case.

The Court concludes that petitioner has not shown that he was denied a constitutionally or federally protected right. Thus, any appeal from this order would not be taken in good faith and a certificate of appealability will not issue.

IT IS SO ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 18, 2011.